## LERSNER v. ADAIR MACH. CO. et al.

(Supreme Court, Special Term, Kings County.     September 12, 1912.)

CORPORATIONS (§ 201*)—STOCKHOLDERS—RIGHT TO RESTRAIN MAJORITY STOCK-
HOLDER FROM VOTING HIS STOCK.

　　During the pendency of an action to compel the president, the majority stockholder, to account for moneys received by him as president. and director, the president, after having been removed, compelled the issuance of a call for a special meeting to amend the by-laws in cer-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

tain particulars. *Held* that, though the stockholders at such meeting might increase or decrease the number of directors, and thus remove plaintiff from the directorate, no injunction to restrain the president from voting his stock will be issued, on the theory that a new directorate may be selected, which may release the president from an accounting to the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 765, 766, 774, 775; Dec. Dig. § 201.*]

Action by Clarence L. Lersner against the Adair Machine Company and another. On motion for a temporary injunction. Motion denied.

McReynolds & Hunter, of New York City, for plaintiff.
Paul Bonynge, of New York City, for defendants.

KELBY, J. The plaintiff, who is a director and stockholder of the defendant corporation, moves to enjoin the individual defendant from voting on the stock of the corporation at a stockholders' meeting. The plaintiff, who owns 25 shares, and two other directors and stockholders, owning together 40 more shares, have come to a sharp disagreement with the individual defendant, who owns 699 shares, as to the business management of the company. Allied with the individual defendant Adair are the other two directors and stockholders, owning, together with his stock, 863 shares of the total stock of 1,000. The board thus is apparently deadlocked. It appears that Adair, who is experienced in the business, was the inventor of certain machines, and the defendant corporation was organized for the purpose of taking over the patents thereon and engaging in the business of handkerchief manufacturing and selling. The plaintiff and those who are with him have acquired their stock from him.

During the experimental stage of the business the manufacturing territory in the United States was practically disposed of to other companies, and Adair then went to Ireland and England for the purpose of extending the market there, and has placed some contracts on which he has received certain sums. He was the president of the company. Lersner, Carlisle, and Greener, who had little practical experience in the business, evidently became dissatisfied with the progress he was making there, and sharp correspondence ensued, culminating in the removal of Adair as president of the board of directors when he was in Europe. He claims to have had no notice of this meeting, and also that the declared purpose of those opposed to him is to compel the purchase of their stock. When he returned to this country, he and other stockholders, owning at least one-third of the capital stock, and in accordance with the by-laws, served notice upon Greener, the secretary, requesting him to call a special meeting of the stockholders to amend the by-laws in certain stated particulars. Greener, who is one of those associated with Lersner, and makes affidavit in support of the application for an injunction, did not do so, and Adair

moved for a writ of mandamus to compel him to do so, upon which Greener did issue the call for a special meeting to be held August 23d. It is to restrain Adair from voting upon his stock at that meeting, as well as to compel him to account for his official acts as president, that this action is brought and the injunction applied for.

The injury that they say is threatened them by his so voting is that he may vote to decrease the number of directors and oust Lersner, Carlisle, and Greener, and elect others who will be subservient to him and will reinstate him as president, and that he will be in a position to have the new board affirm all his past acts and dealings with the company. "Under the statutory law of this state, the stockholders could increase or decrease the number of directors." Bond v. Atlantic Terra Cotta Co., 137 App. Div. 671, 122 N. Y. Supp. 425. Adair has given no notice that he intends, at this meeting, to decrease the number and oust the complainants, but a purpose to do that subsequently may be inferred; and in proposing to amend the by-laws to accord with the statute referred to Adair is proceeding within his legal rights. "I do not see how a court of equity has the power to restrain * * * from voting on the stock * * * upon the allegation, or proof" of an intent "to cause a board of directors to be elected who, by their action or nonaction, may injure or prejudice the interest of the minority stockholders of the corporation." Oelbermann v. New York & Northern R. Co., 77 Hun, 332, 29 N. Y. Supp. 545.

The situation here is quite different from that presented in the sole authority relied upon by plaintiff, namely, People ex rel. Manice v. Powell, 201 N. Y. 194, 94 N. E. 634, of an absolute removal of a director without any statutory authority. There is no proof that Adair intends or threatens to vote his stock, or to control any new directors that may be elected, so as to release himself from an accounting of his dealings with the corporation, and no release which he might obtain from the corporation through his majority stock control would be effective to cut off the right to compel a review of his acts. He repudiates any intent or endeavor in any way to have himself so released, and expressly stipulates in this action to neither directly nor indirectly vote his stock so as to impair, defeat, modify, or extinguish any claim, remedy, or right of action which may exist against him by the Machine Company, or any stockholder, director, officer, or creditor thereof. Under the whole case there is no such showing of any injury to be apprehended to the plaintiff as will permit this court to interfere with the vested right inhering in Adair's stock, to vote it in the management of the company as he thinks best, particularly as this action may be tried at the October term, and the substantial issue thus speedily disposed of.

Motion denied, with $10 costs.