In the Matter of the Election of Officers and Directors of ALLIED FRUIT & EXTRACT COMPANY, INC., Appellant.

DAVID ALTERMAN, Respondent.

First Department, December 24, 1934.

*Jacob M. Kornfeld* of counsel [*Kornfeld & Bisgeir*, attorneys], for the appellant.

*Murray C. Spett* of counsel [*Herman Druck* with him on the brief; *Weisman, Quinn, Allan & Spett*, attorneys], for the respondent.

O'MALLEY, J.   The order appealed from vacates the removal of the petitioner as secretary, director and employee of the appellant and directs his reinstatement.   The decision was predicated upon the ground that the removal was illegal because it had not been submitted to arbitration as provided for in an agreement between the six stockholders of the corporation of which the petitioner was one.   Reversal is sought upon the grounds (1) that the arbitration provision offends against public policy and is void; and (2) the petitioner's removal was justified because of his dishonesty in relation to the corporate affairs.

Prior to November, 1932, the petitioner, Alterman, and five other individuals each had a route of customers in the extract and syrup business.   On the twenty-ninth of that month they agreed in writing to combine forces by the formation of the appellant.   Each party to the agreement contributed his route of customers, as good will, valued at a stipulated sum.   Each was to have an equal one-sixth share and interest and was to make up the difference between his initial investment and one-sixth share by additional cash or from future earnings.

After the formation of the appellant the six individuals were to be members of the board of directors and officers.   Each was to take care of his respective route with the exception of the president, who was to have charge of the office, and each was to have a drawing account of fifty dollars a week.   The five in charge of routes, in addition to soliciting orders, were to make deliveries and collections which in turn were required to be turned over to the corporation.

It was further provided that stockholders by a unanimous " less one vote " might vote a party to the agreement or other stockholder out of the corporation, in which event the party so voted out was to receive $4,000 for his good will and in addition the book value of his share of the assets, payable $3,000 in cash and the balance in equal weekly payments over a period of thirty months, such balance to be paid in notes of equal amounts.   Default of payment of any note for fifteen days accelerated the payment of all.   If the cash was not paid and the notes delivered, the person voted out was to receive his weekly compensation until the cash was paid and the notes delivered.   The agreement further provided: " Should the corporation and the members to this agreement desire to out-vote one of its members before casting a vote thereon, they shall submit the entire matter to a Board of Arbitration consisting of three arbitrators, one to be selected by the company, one by the member about to be out-voted and the two so selected to pick a third arbitrator, none of whom shall be interested

either directly or indirectly in the syrup business, and the grievances, or requests or complaints, if any, shall be submitted to such Board of Arbitration, who shall be authorized and empowered to decide thereon and the decision of such Board of Arbitration shall be final and binding on the parties hereto. The only question which may be submitted to such Board of Arbitration shall be whether or not the member shall be out-voted."

The appellant charges dishonesty on the part of the petitioner, discovered in March, 1934. At this time routes assigned to the various directors or parties were changed. It is claimed that the petitioner failed to appear or report either on his new route or at the office; that investigation disclosed his pretended illness and resulted in discovery that he had failed to turn in $650 in collections, admittedly made and converted to his own use; that upon petitioner's plea that he be given another chance, it was agreed that he might make repayment at the rate of ten dollars a week to be deducted from his future drawings.

Subsequently it is charged that further irregularities in the petitioner's accounts were discovered. Some of his customers to whom bills were sent claimed prior payment. Following another change in assignment of routes, petitioner again feigned illness and failed to report. Further investigation disclosed additional conversion of money by petitioner and fictitious accounts claimed by him to represent credit extended to customers.

At a meeting of the board of directors on July 5, 1934, charges were preferred. Written notice of these and of a proposed directors' meeting for their consideration to be held on July 7, 1934, is claimed to have been served upon the petitioner on July fifth. The notice advised petitioner that he was charged with having collected and converted moneys; had neglected and failed in the discharge of his duties as an employee and officer in failing to attend to the route assigned to him and in carrying out other duties imposed; that he had breached his agreement and could no longer be a party thereto. The notice fixed July seventh for a hearing on the charges and further stated that after the meeting the directors would again meet to afford petitioner opportunity to meet the charges; and a further special meeting would be held at the same time so that the petitioner could be removed as secretary and director in the event that the charges were sustained, and his successor elected.

Personal notice is also claimed to have been given to the petitioner on July sixth, when it is claimed that he called at the office of the corporation.

The petitioner did not appear on July seventh. On July ninth the appellant claims to have again served written notice upon him

to the effect that at the meeting held on the seventh charges were presented as outlined in the original notice and had been sustained; further, that it was unanimously voted that he be removed as director and secretary and that a resolution to that effect was unanimously adopted. The writing further stated that petitioner had no further authority to act in behalf of the corporation.

At a meeting of the board held on July twenty-eighth, at which petitioner appeared, it is claimed by the appellant that he admitted the charges against him, and while asserting that his removal was irregular, offered to resign if the business were divided up and he be given a share. This was refused and the removal of July seventh was again approved by unanimous vote of the other directors.

Respondent denies all acts of dishonesty or admissions by him tending to show dishonesty or dereliction of duty. He asserts that the amount of merchandise received by him for distribution among customers was charged to his account, as it was in the case of every other director, and that each was at liberty to either pay off the sums collected, or have the amount charged against his general account. This was offered in explanation of the charge that he had failed to make proper returns for merchandise. He asserts that an examination of the corporate books will show entries that will support this claim.

In the original petition the respondent denied having received notice of the charges preferred, or of the meeting of July seventh at which they were considered. He also denied receiving notice of his removal, claimed to have been sent to him on July ninth. At the time he claimed to have been in the Neurological Hospital for treatment and observation, where he remained until July fifteenth, when, for the first time, he received notice of the act of the appellant. He also denied having attended at the office of the corporation on July sixth, when it is claimed that he received personal notice of the charges.

Petitioner also generally alleges that he was not given a reasonable opportunity to defend; that the meeting of the board of directors was held in a manner contrary to the provisions of the stockholders' agreement calling for the unanimous presence of all directors, and that there is no proof by way of the minutes of the corporation as to what actually transpired.

It is to be noted at the outset that the acts here complained of were those done by the directors of the corporation, as such, as distinguished from the stockholders thereof and that the petitioner was removed as a director and officer of the corporation.

We are of the opinion that disregard of the provision for arbitration afforded no ground for the relief sought. To give effect thereto with respect to acts of the directors would deprive them of the exercise of their discretion and best judgment. Removal for even dishonesty and gross breach of trust could not be effected in the face of this provision; and the duty of the board of directors to manage the affairs of the corporation in accordance with their best judgment would be wholly abrogated in all cases. Directors may not be bound by any such agreement in the exercise of their duties, nor may their authority in any way be delegated to others. (Gen. Corp. Law, § 27; *McQuade* v. *Stoneham*, 263 N. Y. 323; *Manson* v. *Curtis*, 223 id. 313.)

The manner of calling meetings of the directors and the conduct thereof are to be controlled by the certificate of incorporation and the by-laws, rather than by an agreement among the stockholders. The validity or regularity of the meetings of the board of directors in question is to be thus determined.

While we are of opinion that the petitioner was not entitled to the order requiring his reinstatement, we think that in view of his denials of wrongdoing, of receipt of due notice of charges and his claim that opportunity to meet them was not afforded, the issues should be tried out on an alternative order. If it is then found that the directors acted reasonably, and not arbitrarily, and that the petitioner was given a reasonable opportunity to defend and that the charges were substantiated, then a peremptory order for his reinstatement to membership in the corporation and as a director and officer should not issue. So far as appears in the record, there was no provision either in the articles of incorporation or in the by-laws giving to the board power to remove a director, without cause. (*People ex rel. Manice* v. *Powell*, 201 N. Y. 194, 201, 202; *Matter of Korff*, 198 App. Div. 553; 4 Cook Corp. [8th ed.] § 711.)

While neither the petition nor the order appealed from makes specific mention of the nature of the proceeding, we have treated the application as one for a peremptory order of mandamus. While ordinarily title to office should be tested by quo warranto rather than mandamus, the former proceeding lies only where the office in dispute is then held by another party under color of right. (Civ. Prac. Act, § 1208.) The present case does not come squarely within such authorities as *People ex rel. McLaughlin* v. *Police Comrs.* (174 N. Y. 450) and *People ex rel. Manice* v. *Powell* (*supra*).

The peculiar formation of the corporation under consideration presents, we think, a situation analogous to that of a membership

corporation. The petitioner, broadly speaking, seeks but his reinstatement as a member of the corporation. Mandamus, therefore, is a proper remedy.

It follows, therefore, that the order appealed from should be reversed, with twenty dollars costs and disbursements, and the application granted to the extent of directing the issuance of an alternative order.

FINCH, P. J., MARTIN, TOWNLEY and GLENNON, JJ., concur.

Order reversed, with twenty dollars costs and disbursements, and motion granted to the extent of directing the issuance of an alternative order of mandamus. Settle order on notice.